IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHARLES FRANKLIN IRELAND, #506419 | § | |
| VS. | § | CIVIL ACTION NO. 6:05cv171 |
| DOUG DRETKE, ET AL. | § | |

<u>MEMORANDUM OPINION AND</u>
<u>ORDER OF PARTIAL DISMISSAL</u>

Plaintiff Charles Franklin Ireland, an inmate previously confined at the Beto Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Director Doug Dretke, Officer Sandra Baldwin, Officer John Doe, Officer Jane Doe and an unidentified gang intelligence officer. The complaint was referred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on May 13, 2005. The plaintiff complained that the defendants failed to protect him from an assault by another inmate. On October 25, 2005, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the plaintiff's claims. A *Spears* hearing is a proceeding which allows a litigant to offer sworn testimony in support of his allegations. The Fifth Circuit has stated that a *Spears* hearing is appropriate "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. It serves to implement the congressional intent of meaningful access to

court for indigent litigants, and also to allow the district court to winnow out the wheat from the unusual amount of chaff necessarily presented in a system which fosters *pro se* litigation. *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (*citing Watson v. Ault*, 525 F.2d 886, 890 (5th Cir. 1975). The plaintiff was given written notice that the hearing was being conducted to determine if he should be allowed to proceed on his claims or whether the complaint should be dismissed as frivolous.

The incident in question occurred at the Beto Unit on June 25, 2003. The plaintiff was attacked by inmate Robert Hollon, a member of the Aryan Circle gang, while on his way to the law library. He stated that he believes he was attacked because of the nature of his criminal offense, which was sexual assault of a child. He had severe head injuries requiring reconstructive surgery to his face that included steel plates above and below his left eye and on his jaw.

The plaintiff testified that he included Director Doug Dretke as a defendant because he was aware of problems with gang members attacking sex offenders, but gang members are allegedly permitted to roam freely at the Beto Unit. He sued Officer Baldwin because she purportedly instigated the attack. The plaintiff testified that she told members of the Aryan Circle about his offense and pointed him out to them. Her actions cleared the way for Hollon to attack him. The plaintiff testified that Hollon knew he was going to the law library and was waiting for him there. The plaintiff further testified that Officer Baldwin was at the scene of the attack and she did nothing to protect him. The plaintiff testified that Officers Jane and John Doe were also present and they failed to do anything to protect him. In his amended complaint, the plaintiff alleged that the unidentified gang intelligence officer told him that a threat had been made against him by gang members, but he failed to protect the plaintiff.

The plaintiff gave the Court permission to review records compiled by the Office of the Inspector General (IAG), along with his medical and grievance records. The Report by the IAG documented actions taken to investigate the incident. The plaintiff told an IAG investigator that he was struck from behind in the lobby to the school at the Beto Unit while he was waiting to enter the law library. The assailant kicked him on the eye and jaw. Medical records reveal that the plaintiff received a fracture to the mandible and peri-orbital bone around the left side of his face. IAG also determined that the plaintiff was struck by inmate Hollon, who struck him with a padlock and dominoes in a sock. The IAG closed the case with a request for criminal charges.

The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "[A]n Eighth Amendment claimant need not show that a prison official acted believing that harm would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id.* at 843 n. 8.

In the present case, the plaintiff has alleged facts sufficient to state a potentially meritorious civil rights lawsuit against Officer Sandra Baldwin, thus she has been ordered to answer the claims made against her. The claims against Jane and John Doe are another matter. The plaintiff has only shown that they were in the area when he was attacked. He has not shown that they had any knowledge that the attack was going to occur or had any knowledge that the plaintiff faced a substantial risk of serious harm. The IAG records reveal that the inmates were ordered to stop by officers in the area quickly after the attack began. The inmates were ordered to lie on the ground. The plaintiff complied. Inmate Hollon stopped attacking the plaintiff, and the weapon was taken from him. The facts as alleged and developed do not give rise to an inference that the officers in the area, other than Officer Baldwin, were deliberately indifferent to the plaintiff's safety.

The claims against Director Dretke and the unidentified gang intelligence officer are even more problematic. Neither were at the scene of the incident. In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Neither individual participated in the alleged act of misconduct. The only way they could possibly be implicated in these claims is through their supervisory capacity. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. The claim that they were generally aware about danger does not show that they were deliberately indifferent. The claims against Officers John and Jane Doe, Director

4

Dretke and the unidentified gang intelligence officer fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against them should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

As a final matter, the plaintiff testified that he received a letter from grievance department officials specifying that he had completed his administrative remedies about this matter as far as they were concerned. He was instructed to forward a copy of the letter to the Court. As of today, the Court has not received the letter. It is noted that the plaintiff must have exhausted his administrative remedies to proceed with the case. 42 U.S.C. § 1997e. In the absence of exhaustion or the letter in question, the plaintiff's lawsuit may be dismissed for failure to exhaust. It is accordingly

**ORDERED** that the plaintiff may proceed with his failure to protect claim against Officer Sandra Baldwin. It is further

**ORDERED** that the claims against Officers John and Jane Doe, Director Doug Dretke and the unidentified gang intelligence officer are **DISMISSED** with prejudice. It is finally

**ORDERED** that the plaintiff has ten days from the receipt of this Order to file the letter from grievance officials specifying that he had exhausted his administrative remedies. The plaintiff is placed on notice that the lawsuit may be dismissed if he fails to comply with this Order.

**SIGNED** this **18** day of **November, 2005.**

_____
HARRY W. McKEE
UNITED STATES MAGISTRATE JUDGE